No. 21-20022

# United States Court of Appeals
# for the
# Fifth Circuit

CHARLES JOHNSON,

*Plaintiff-Appellant*

- *v.* -

THEHUFFINGTONPOST.COM, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Texas
No. 4:20-CV-179

## BRIEF FOR *AMICUS CURIAE* AMA MULTIMEDIA, LLC
## IN SUPPORT OF PLAINTIFFS-APPELLEES

Marc J. Randazza
Jay M. Wolman
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: (702) 420-2001
ecf@randazza.com

Counsel for *Amicus Curiae*
AMA Multimedia, LLC

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that—in addition to the persons and entities listed in the appellees Certificate of Interested Persons—the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Plaintiff-Appellant**
Charles Johnson

**Attorneys for Plaintiff-Appellant**
Joseph D. Sibley, IV
Camara & Sibley, L.L.P.

**Defendant-Appellee**
TheHuffingtonPost.com, Inc.

**Attorneys for Defendant-Appellee**
Jean-Paul Jassy
William T. Um
Jassy Vick Carolan, L.L.P.

Patrick W. Mizell
Marc Aaron Fuller
Vinson & Elkins, L.L.P.

**Amicus Curiae**
AMA Multimedia, LLC

**<u>Attorneys for Amicus Curiae</u>**
Marc J. Randazza
Jay M. Wolman
Randazza Legal Group, PLLC

Respectfully Submitted,

RANDAZZA LEGAL GROUP, PLLC

/s/ Marc J. Randazza
Marc J. Randazza
Jay M. Wolman
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: (702) 420-2001
ecf@randazza.com

Counsel for *Amicus Curiae*
AMA Multimedia, LLC

# TABLE OF CONTENTS

INTEREST OF AMICUS CURIAE .............................................................1

ARGUMENT ......................................................................................1

1.0   The Decision by the Panel was Erroneous ....................................2

2.0   The Decision Created a Circuit Split............................................8

3.0   Failure to Correct the Error will Result in Havoc .......................11

# TABLE OF AUTHORITIES

## CASES

*42 Ventures v. Rend,*
  No. 20-cv-00228-DKW-WRP,
  2020 U.S. Dist. LEXIS 197796 (D. Haw. Oct. 23, 2020) ......................12

*AMA Multimedia, LLC v. Wanat,*
  970 F.3d 1201 (9th Cir. 2020)................................................................11

*Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty.,*
  480 U. S. 102 (1987) ...............................................................................7

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 (1985) ...............................................................................10

*Calder v. Jones,*
  465 U.S. 783 (1984) .........................................................................4, 5, 7

*CrossFit, Inc. v. Fitness Trade sp. z o.o.,*
  No. 18-CV-2903-CAB-BLM,
  2020 U.S. Dist. LEXIS 204853, (S.D. Cal. Nov. 2, 2020) .....................12

*Daimler AG v. Bauman,*
  571 U.S. 117 (2014) .................................................................................7

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court,*
  141 S. Ct. 1017, 1028 (2021)...................................................................8

*Handsome Music, LLC v. Etoro USA LLC,*
  No. LACV 20-08059-VAP (JCx),
  2020 U.S. Dist. LEXIS 238942 (C.D. Cal. Dec. 17, 2020) ....................12

*Hb Prods. v. Faizan,*
  No. 19-00487 JMS-KJM,
  2020 U.S. Dist. LEXIS 216281 (D. Haw. Nov. 18, 2020) .....................12

*Helicopteros Nacionales De Colombia v. Hall,*
  466 U.S. 408 (1984) .................................................................................8

*Int'l Shoe Co. v. Washington,*
  326 U.S. 310 (1945) .................................................................3

*Janus v. Freeman,*
  No. 19-55199,
  2020 U.S. App. LEXIS 40355 (9th Cir. Dec. 24, 2020) ........................11

*Johnson v. TheHuffingtonpost.com, Inc.,*
  No. 21-20022,
  2021 U.S. App. LEXIS 38102 (5th Cir. Dec. 23, 2021) .........................5

*Keeton v. Hustler Magazine, Inc.,*
  465 U.S. 770 (1984) .................................................................3, 5, 6, 7

*Ketayi v. Health Enrollment Grp.,*
  No. 20-cv-1198-GPC-KSC,
  2021 U.S. Dist. LEXIS 19594 (S.D. Cal. Feb. 1, 2021) ........................11

*Mavrix Photo, Inc. v. Brand Technologies, Inc.,*
  647 F.3d 1213 (9th Cir. 2011) .........................................2, 4, 8, 9, 10, 11

*uBID v. GoDaddy Grp., Inc.,*
  623 F.3d 421 (7th Cir. 2010) .................................................................2, 10

*UMG Recordings, Inc. v. Kurbanov,*
  963 F.3d 344, 354 (4th Cir. 2020) .................................................2, 9, 10

*Walden v. Fiore,*
  571 U.S. 277 (2014) .................................................................3

*Westbrook v. Paulson,*
  No. 2:20-cv-1606,
  2021 U.S. Dist. LEXIS 47751 (W.D. Wash. Mar. 15, 2021) .................11

*World-Wide Volkswagen Corp. v. Woodson,*
  444 U.S. 286 (1980) .................................................................3, 7

*Yeager v. Airbus Grp. SE,*
  No. 8:19-cv-01793-JLS-ADS,
  2021 U.S. Dist. LEXIS 38313 (C.D. Cal. Jan. 26, 2021) .......................12

## INTEREST OF AMICUS CURIAE

AMA Multimedia, LLC ("AMA"), is a Nevada limited liability company. AMA's subscription-based websites issue login IDs and passwords to subscribers. Subscribers are then able to access the secure areas of AMA's websites to view its copyright-protected works. AMA owns several online properties and brands protected by federally registered trademarks and common law. AMA has had to litigate claims against foreign defendants and, as a result, has observed errors in jurisprudence regarding personal jurisdiction. It cannot stand idly by and watch while other victims lose their day in court against a defendant who knowingly targets a jurisdiction, but claims immunity from being haled into that jurisdiction because it also publishes its content nationally or, even, globally.[1]

## ARGUMENT

According to the panel, all Huffington Post needs to do to get away with libel of Texans is to move to a country that has no appreciation for

---

[1] No party's counsel authored the brief in whole or in part, no party or their counsel contributed money intended to fund preparing or submitting this brief, and no person other than *amicus curiae* or its counsel contributed money intended to fund preparing or submitting this brief.

that type of harm, but otherwise continue business as usual, pumping ads and content into Texas. It would not be able to be haled into Texas courts and citizens of Texas would have no avenue to pursue Huffington Post abroad. That cannot be the case. The decision in this matter must comport with the jurisprudence of the Supreme Court and this Circuit's own precedent, rather than cause mayhem, as a similarly-flawed decision in the Ninth Circuit has caused. Rehearing should be granted and the panel's decision should be reversed.

## 1.0 The Decision by the Panel was Erroneous

In a split with the Fourth, Seventh, and Ninth Circuits,[2] the panel's decision below stands for the proposition that an online tortfeasor cannot be haled into Texas courts (or anywhere else in this Circuit) to answer for torts aimed at a Texan, profiting at the expense of that Texan, with full knowledge of this effect, because its conduct occurs on a national scale. The panel tacitly overturns the Supreme Court's holding in *World-Wide Volkswagen,* where it held "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction

---

[2]   *UMG Recordings, Inc. v. Kurbanov,* 963 F.3d 344, 354 (4th Cir. 2020); *uBID v. GoDaddy Grp., Inc.,* 623 F.3d 421 (7th Cir. 2010); and *Mavrix Photo, Inc. v. Brand Technologies, Inc.,* 647 F.3d 1213 (9th Cir. 2011).

over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980). The panel's decision also imposes a barrier to jurisdiction where it appears to require "minimum contacts" in excess of what the Supreme Court found sufficient in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984). Thus, "[a]lthough a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014), quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (cleaned up). Appellee, TheHuffingtonPost.com, Inc. ("HuffPost"), placed allegedly libelous content with targeted advertisements into the stream of commerce with the expectation that they would be consumed by Texas consumers. This Court should grant rehearing *en banc* to resolve the split and ensure foreign tortfeasors who purposefully direct their activities at and profit from Texans are held accountable in Texas.

Like its sister courts, the panel applied the standard three-part test to determine whether HuffPost had the requisite minimum contacts to warrant exercise of specific jurisdiction: (1) whether the defendant purposefully directed its conduct towards the forum or purposefully availed itself of the privileges of conducting activities in the forum; (2) whether the claim arose out of or related to the defendant's forum-related activities; and (3) whether the assertion of jurisdiction against the defendant was reasonable. *See* Slip Op. at 4. To determine "purposeful direction," the panel applied the "effects test" set forth in *Calder v. Jones*, 465 U.S. 783 (1984); see also *Mavrix Photo, Inc. v. Brand Techs, Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (applying the effects test in a copyright infringement case). Using that test, the defendant must have (1) committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Mavrix*, 647 F.3d at 1228. Here, the nature of a libel claim is one of intent. And HuffPost would know that any reputational injury to Mr. Johnson would be felt where he lives and works (here, Texas). The only real question is whether there was express aiming, and there was.

4

The panel incorrectly determined that HuffPost did not exploit Texas. 2021 U.S. App. LEXIS 38102, at *8. As observed in Judge Haynes's dissent below:

> HuffPost has fulsome circulation in Texas, and its presence in Texas was not "random, isolated, or fortuitous." Far from it: HuffPost actively exploited the forum through Texas-specific advertising. As in *Keeton* [*v. Hustler Magazine, Inc.*], HuffPost "continuously and deliberately exploit[s]" the Texas market, so it should not be surprised if it is "haled into court there" for allegations of libel. 465 U.S. [770,] 781 [(1984)]. As in *Keeton*, it doesn't matter that the article did not expressly address Texas. As in *Keeton*, jurisdiction exists.

*Johnson v. TheHuffingtonpost.com, Inc.,* No. 21-20022, 2021 U.S. App. LEXIS 38102, at *31 (5th Cir. Dec. 23, 2021) (Haynes, J., dissenting). The panel disclaimed jurisdiction, stating that HuffPost's "story about Johnson has no ties to Texas. The story does not mention Texas. It recounts a meeting that took place outside Texas, and it used no Texan sources." 2021 U.S. App. LEXIS 38102, at *7. But, a content-based forum-specific focus is neither required, nor is it sensical. Both *Calder* and *Keeton* were decided by the Supreme Court the same day, illustrating the different applications of personal jurisdiction across different fact sets. In *Calder*, the Court held there was jurisdiction where the forum was the "focal point" of the article and the harm suffered; that same Court in

*Keeton* held there was jurisdiction in a non-focal forum because there were sufficient minimum contacts through the magazine's "regular circulation of magazines" in New Hampshire. New Hampshire was not the "focal point" of Hustler magazine, nor was there a New Hampshire focus to the magazine. In *Keeton*, the plaintiff filed a libel suit in New Hampshire. The defendant's only contacts with New Hampshire were sales of 10,000 to 15,000 copies of its magazines each month. 465 U.S. at 772. The Court held that the defendant was subject to personal jurisdiction in New Hampshire. *See id.* at 773-74. The Court reasoned that although the defendant's magazine was "aimed at a nationwide audience", it "continuously and deliberately exploited the New Hampshire market" by selling magazines in the State. *Id.* at 781. Thus, the Court determined it was fair to require the defendant to "answer for the contents of [its] publication wherever a substantial number of copies are regularly sold and distributed." *Id. Calder* and *Keeton* represent two different methods of satisfying due process. Even if a "focal point" under *Calder* cannot be found, the distribution level under *Keeton* nevertheless permits a court to exercise personal jurisdiction.

Just weeks prior to *Walden*, the Supreme Court's opinion in *Daimler AG v. Bauman*, <u>571 U.S. 117, 128</u> n.7 (2014), demonstrated personal jurisdiction is not so narrow as viewed by the panel. The Supreme Court in *Daimler* specifically looked to *Keeton*, *Calder*, and *World-Wide Volkswagen*, to highlight cases where foreign defendants were subject to jurisdiction. As in *Keeton*, HuffPost "continuously and deliberately exploited" the Texas market. <u>465 U.S. at 780-81</u>. As in *World-Wide Volkswagen*, HuffPost took "efforts ... to serve, directly or indirectly, the market for its product in" Texas. <u>444 U.S. at 297</u>. And, as noted in *Daimler*, "specific jurisdiction may lie over a foreign defendant that places a product into the 'stream of commerce'" while also 'designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State.'" <u>571 U.S. at 128</u> n.7, quoting *Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty.*, <u>480 U. S. 102, 112</u> (1987) (opinion of O'Connor, J.). HuffPost placed its website, and its allegedly libelous content, into the stream of commerce, selling the associated advertising space with knowledge it

would be targeted to the forum (Texas). HuffPost knows what location-based, targeted advertising is being displayed on its website. HuffPost knows where its revenue and the value from its website comes from. Thus, "there is a strong 'relationship among the defendant, the forum, and the litigation'—the 'essential foundation' of specific jurisdiction." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1028 (2021), quoting *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 414 (1984). There is personal jurisdiction over HuffPost.

## 2.0   The Decision Created a Circuit Split

As noted above, the panel's decision conflicts with the Ninth Circuit's decision in *Mavrix*. It also conflicted with the Fourth and Seventh Circuits. In *Mavrix*, the court examined whether a celebrity gossip site appealed to a substantial California audience because the record did "not reflect how many of the website's visitors are [forum] residents," requiring the court to look at additional evidence to determine the website's appeal in the forum. *Mavrix*, 647 F.3d at 1222, 1230. The additional evidence that the *Mavrix* court considered was whether the website's contents were of interest to California residents and the size and value of the California market (which was unknown). This evidence

was used to infer that the California forum was "an integral component of [the defendant's] business model and its profitability." *Id.* at 1230. The *Mavrix* court got it right. If the panel had followed *Keeton* and *Mavrix*, it would have held that HuffPost "anticipated, desired, and achieved a substantial" Texas market and that the Texas "audience is an integral component of [the defendant's] business model and profitability." *Mavrix,* 647 F.3d at 1230.

In the Fourth Circuit's opinion in *Kurbanov*, twelve American record companies sued a Russian defendant who operated two "stream-ripping" websites "through which audio tracks may be extracted from videos available on various platforms (e.g., YouTube) and converted into a downloadable format (e.g., mp3)." 963 F.3d at 348. The Fourth Circuit held that the defendant had "purposefully availed himself of the privilege of conducting business in Virginia and thus had a 'fair warning' that his forum-related activities could 'subject [him] to [Virginia's] jurisdiction." *Kurbanov,* 963 F.3d at 353. In finding personal jurisdiction, Fourth Circuit looked at the number of visitors from Virginia and the geotargeted advertising by advertising brokers, as well as the defendant's assertion of U.S. intellectual property laws, domain name registration

with U.S.-based registrars, and defendant's U.S.-based servers. *See id.* at 353-54. The Fourth Circuit cited *Mavrix* for the proposition that it was immaterial whether it was the defendant or his advertising brokers that were targeting forum residents. *Kurbanov,* 963 F.3d at 354 (citing Mavrix, 647 F.3d at 1230). The Seventh Circuit took a similar tack in *uBID,* where the defendant had a nationwide "virtual presence". 623 F.3d at 427-428. The cases are factually similar, but the Ninth, the Seventh, and the Fourth Circuits reached opposite conclusions.

The Court needs to prevent a circuit split. The panel would allow foreign tortfeasors to avoid Texas jurisdiction by claiming to be willfully blind to their exploitation of the Texas market while still generating profits from their Texas audience. This "theory of jurisdiction would allow corporations whose websites exploit a [global] market to defeat jurisdiction in [countries] where those websites generate substantial profits from local consumers." *Mavrix,* 647 F.3d at 1231 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473-74 (1985)).

Future courts will cite to the panel's decision and misapply *Walden* to find virtual contacts to be meaningless. They can avoid compliance

with Texas law even where Texas is their largest market. The panel's decision cannot stand.

## 3.0    Failure to Correct the Error will Result in Havoc

The errors of the Ninth Circuit in a case involving *amicus* have had significant consequences to litigants. In *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020), the issue was jurisdiction in the United States as a whole, but it was analyzed under the same framework. In a dissent in a different case, the decision in *Wanat* was used to stand for the proposition that personal jurisdiction is lacking where "the market for the website was global". *Janus v. Freeman*, No. 19-55199, 2020 U.S. App. LEXIS 40355, at *18 (9th Cir. Dec. 24, 2020) (Baylson, J., dissenting). District courts in the Ninth Circuit have struggled with the decision relative the contrasting propositions that, under *Mavrix*, a "substantial number" of visitors from the forum is sufficient to confer personal jurisdiction, whereas a 20% plurality in *Wanat* was not. *Westbrook v. Paulson*, No. 2:20-cv-1606, 2021 U.S. Dist. LEXIS 47751, at *15 (W.D. Wash. Mar. 15, 2021); *see also Ketayi v. Health Enrollment Grp.*, No. 20-cv-1198-GPC-KSC, 2021 U.S. Dist. LEXIS 19594, at *29-31 (S.D. Cal. Feb. 1, 2021); *Yeager v. Airbus Grp. SE,* No. 8:19-cv-01793-JLS-

ADS, <u>2021 U.S. Dist. LEXIS 38313, at \*16-18</u> (C.D. Cal. Jan. 26, 2021);

*Handsome Music, LLC v. Etoro USA LLC,* No. LACV 20-08059-VAP

(JCx), <u>2020 U.S. Dist. LEXIS 238942, at \*20-28</u> (C.D. Cal. Dec. 17, 2020);

*CrossFit, Inc. v. Fitness Trade sp. z o.o.,* No. 18-CV-2903-CAB-BLM, <u>2020</u>

<u>U.S. Dist. LEXIS 204853, at \*10-12</u> (S.D. Cal. Nov. 2, 2020); *42 Ventures*

*v. Rend,* No. 20-cv-00228-DKW-WRP, <u>2020 U.S. Dist. LEXIS 197796, at</u>

<u>\*7-9</u> (D. Haw. Oct. 23, 2020). Notably, one court specifically chose to

ignore evidence of geolocated targeted advertising because of the decision

in *Wanat. Hb Prods. v. Faizan,* No. 19-00487 JMS-KJM, <u>2020 U.S. Dist.</u>

<u>LEXIS 216281, at \*14-15</u> (D. Haw. Nov. 18, 2020) ("Plaintiff's argument

that Defendant's use of geo-located advertising shows that Defendant

targeted the United States and/or Hawaii is foreclosed by *Wanat.*") This

Court has the opportunity to stop further harm to Texans, and the

consequences of an error-riddled panel decision, by ensuring personal

jurisdiction exists where the defendant targets Texas.

Dated January 13, 2022.

Respectfully Submitted,

RANDAZZA LEGAL GROUP, PLLC

/s/ Marc J. Randazza
Marc J. Randazza
Jay M. Wolman
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: (702) 420-2001
ecf@randazza.com

Counsel for *Amicus Curiae*
AMA Multimedia, LLC

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Marc J. Randazza
Marc J. Randazza

Counsel for *Amicus Curiae*
AMA Multimedia, LLC

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 2,423 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook font size 14.

/s/ Marc J. Randazza
Marc J. Randazza

Counsel for *Amicus Curiae*
AMA Multimedia, LLC